Abraham N. Geller, J.
This is an action to recover damages arising from the breaking of a hypodermic needle inserted into plaintiff’s right buttock by defendant doctor for the purpose of administering an intramuscular injection of procaine hydrochloride. Needles of this type, after proper washing, drying and care, are used more than once.
The court reserved decision on the motions to dismiss made by defendant doctor and by defendant surgical supply firm from which the needle had been purchased by him. The doctor, as well as the plaintiff, testified that plaintiff had not moved but stood “stock still” at time of injection. No evidence was offered by the plaintiff or the doctor relative to any specific defect. The court therefore submitted the issue to the jury as requiring a determination by it of the cause of the breaking of the needle on the basis of such inferences as should reasonably be drawn from the evidence.
*604 The jury was instructed that the mere fact that the needle broke did not in and of itself establish negligence, but that they could find the doctor liable only if they found such negligence in the maintenance, care or use of the needle from the time of its purchase by him up to and including the time of the injection as caused it to break. If it found such negligence on his part, it was to render a verdict against him and in favor of defendant supplier. But, if it did not, thereby leaving as the only possible cause of the occurrence the delivery to the doctor of a defective needle by his supplier, it should then render a verdict against the supplier on plaintiff’s cause of action against that defendant for breach of warranty. (The court was mindful of the limitations imposed by the rule of privity in breach of warranty actions, but was of the opinion that patients, for whose use hypodermic needles are purchased by their doctors, belong in the same category as members of the family or employees of purchasers, for whose benefit as direct intended users of the product the privity rule has in recent cases been relaxed; in any event, that issue was submitted, subject to reservation on the motion to dismiss.)
The jury rendered a verdict against the doctor in the sum of $10,000. The court will first deal with that defendant’s motion to dismiss on the ground that plaintiff failed to prove a prima facie case of negligence or malpractice against him, and then with his motion to set aside the verdict as excessive.
It is contended, citing Robbins v. Nathan (189 App. Div. 827) and Morwin v. Albany Hosp. (7 A D 2d 582), that there was a failure to produce expert medical testimony to support the claim of malpractice or negligence. Morwin involved a claim of malpractice in the performance of a delicate operation, while Bobbins involved a claim of lack of skill by a dentist in the extraction of a tooth. The courts there held that the alleged malpractice could not be established merely by showing the results of the operation or extraction.
However, in both of these decisions it was pointed out, as the Court of Appeals did in Benson v. Bean (232 N. Y. 52, 56) and in Meiselman v. Crown Heights Hosp. (285 N. Y. 389, 396), that there could be instances of negligence on the part of a doctor where the results may be of such character or the facts of such nature as to warrant the inference of want of care from the testimony of laymen, so that the question does not require special knowledge or skill but is within the experience and observations of the jurors themselves from, which they may draw their own conclusions.
*605 Plaintiff did, in fact, produce a medical expert, who gave testimony as to the methods and meticulous care required in properly washing, cleaning, drying and periodically testing needles of this type to permit their safe reuse. He was not directly asked, nor did he give, his opinion as to whether defendant’s care or use of these needles was in accordance with, or deviated from, standard and approved medical practice. But defendant himself testified that he used this type of needle, an infiltration needle, “very, very few times,” which, he said, meant “ three or four or five times.”
He claimed that the particular needle used on this occasion was a new one. But the jury quite evidently did not credit this claim and the evidence fully supports the jury’s conclusion. The doctor had not purchased any such needles since his last purchase of a dozen, delivered in a sealed box by the supplier, about 14 months prior to the date of this injection. The undisputed evidence showed that during that extended period of time he had purchased medications used in intramuscular infiltrations in quantities indicative of the giving at average dosages of more than 1,000 injections. The jury could reasonably infer that these dozen needles had been reused so excessively as to weaken them, even if proper care were taken, and in light of the expert testimony concerning the necessity and reason for strict maintenance standards, that they had been rendered dangerous for further use.
So, in this case, the jury was warranted in holding the doctor liable for this injury to his patient resulting not from want of the requisite knowledge and skill but from the omission to exercise reasonable care within the experience and judgment of the jurors themselves. The motion to dismiss the complaint is therefore denied.
The question of the amount of damages ascribable to this occurrence, the resulting operation to remove the needle, and the claimed aftereffects is not a simple one. Plaintiff was subjected to an immediate but unproductive probing for the needle, followed by an unsuccessful operation with the aid merely of an X ray, and then by a successful removal operation through the use of a metal detector. But plaintiff’s present complaints are with respect to the same parts of the body and the very conditions from which he was suffering at the time he was receiving these injections, although the pain is said to be stronger and more radiating. Such aggravation of the existing condition would plausibly follow from the scars left by the operations and the concomitant injury to the tissues in that area. However, the court is of the opinion that the award is inclusive of some *606 element of the pre-existing condition, despite the fact that the jury was instructed to eliminate damages attributable to plaintiff’s prior ailments or condition. The court views the evidence of recoverable injury, pain and special damages as supportive of a verdict at most of $7,500.
The motion to set aside the verdict as excessive is accordingly granted unless plaintiff stipulates within 15 days from date hereof to reduce the verdict to $7,500.